UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

ANDREA SHAPIRO, et al.,               :
                                      :
                Plaintiffs,           :          06 Civ. 1836 (JSR)
                                      :
                -v-                   :          MEMORANDUM ORDER
                                      :
NEW YORK CITY DEPARTMENT OF           :
EDUCATION, et al.,                    :
                                      :
                Defendants.           :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     This is an age and disability discrimination case brought by
twelve current and former teachers at the Graphics Communications
Arts High School ("GCA") against the New York City Department of
Education (otherwise known as the New York City Board of Education,
or "BOE"), GCA Principal Jerod Resnick, and GCA Assistant Principals
Judith Silverman and Eric Brand.  On September 17, 2007, on consent
of the parties, the Court dismissed all claims against defendants
Silverman and Brand, with prejudice.

     Plaintiffs' Third Amended Complaint ("Complaint") alleged,
first, that defendant BOE violated the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., by discriminating
against plaintiffs on account of age and by retaliating against them
because they complained about such discrimination; second, that all
defendants violated the Equal Protection Clause of the Fourteenth
Amendment of the Constitution, as made actionable here pursuant to 42
U.S.C. § 1983, by altering the terms, conditions and privileges of
plaintiffs' employment in a manner different from how it treated
similarly-situated employees younger than plaintiffs; third, that all

defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and 29 U.S.C. § 621, by discriminating against plaintiff Josephina Cruz because of her disability and by retaliating against her; and, fourth, that all defendants violated the Due Process clause of the Fourteenth Amendment of the United States Constitution, made actionable here pursuant to 42 U.S.C. § 1983, by placing negative reports in plaintiffs' personnel files without giving them notice or an opportunity to be heard.  Complaint ¶¶ 27-34.

Following discovery, defendants moved for summary judgment in their favor on all remaining claims by all remaining plaintiffs.  In their responsive papers, plaintiffs abandoned their Due Process claims, which are therefore dismissed with prejudice.  See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 1.  Furthermore, at oral argument, the Court, for the reasons stated from the bench, see transcript 9/5/07 at 25, dismissed with prejudice all claims brought by plaintiff Andrea Shapiro and the disability discrimination claim brought by plaintiff Josephina Cruz.  The remainder of the summary judgment motion, directed to the ADEA and § 1983 age discrimination claims against defendants BOE and Resnick, is addressed below.

The facts pertinent to this motion, either undisputed or, where disputed and supported by competent evidence, taken most favorably to plaintiffs, are as follows.  During the 2004-2005 school year, five teachers were transferred from GCA and reassigned to another school.

2

All were over age forty.  See Affirmation of Helen G. Ullrich dated Aug. 17, 2007 ("Ullrich Aff."), Exhibit 3.  In June 2005, sixteen teachers at GCA were given unsatisfactory ratings ("U ratings") for the year.  Of the 16, thirteen were over the age of 40.  A year later, in June 2006, eight teachers received U ratings, only one of whom was under age forty.  Ullrich Aff., Exhibit 2.

One of the teachers given a U rating in 2005 was plaintiff Diana Friedline, who was 53 years old at the time.  Friedline has a New York State teaching license in commercial art and a New York City teaching license in cold type composition.  She has been a full time teacher since 1989.  In the Spring of 2005, Friedline applied for a curriculum writing position at GCA.  Defendant Resnick told Friedline that Friedline was not eligible for the position because she was certified with the wrong license.  Id., Exhibit 24 at 26-27, 80-81. Friedline filed a grievance objecting to her non-selection for the position, which was denied.  Def. 56.1 ¶ 51; Pl. 56.1 ¶ 51. Friedline also applied to have a substitute vocational assistant student teacher placed in her classroom; but this application was also denied.  Id., Exhibit 12 at ¶¶ 7-9.  When Friedline complained to Resnick that these actions were prompted by age discrimination, he told her that he preferred to hire younger candidates.  Id. ¶ 11.  In June 2005, Friedline was giving a U rating for the year.

One of the teachers given a U rating in both years was plaintiff Josefina Cruz, who was 58 years old in June 2005.  She has been a teacher of Spanish at GCA since 2003.  In the Spring of 2005, she

received 24 classroom visits in a two-month period, which she testified was well above the norm.  Id., Exhibit 25 at 117; Exhibit 13 ¶ 11.  Her schedule was changed seven times in two weeks.  Id., Exhibit 25 at 124.  She was then given a U rating for the year.  Id., Exhibit 13 ¶ 12.  In January, 2006, Cruz failed to administer the oral portion of the Spanish regents exam because she had not been given exam materials, which were kept in a vault to which she had no access.  Id., Exhibit 25 at 49-50, Exhibit 13 ¶¶ 19-20.  She was then given a U rating for the 2005 year, served with disciplinary charges, and reassigned to the Manhattan Regional Operation Center.  Id., Exhibit 32 at 57-58, 97.

Another teacher who was given a U rating in 2005 was plaintiff Anthony Ferraro, who was then 72 years old.  He began teaching at GCA in 1985.  In May, 2003, defendant Resnick requested that teachers planning to retire contact him to let him know of their plans.  Ferraro contacted Resnick but then changed his mind and decided not to retire.  When Ferraro told Resnick of his change in plans, Resnick asked Ferraro's age and then expressed "extreme dismay" that Ferraro was planning to say on at the school.  Id., Exhibit 26 at 81-82; Exhibit 14 ¶ 3.  In December, 2004, Assistant Principal Johnson (not a defendant) repeatedly chided Ferraro for continuing to work and reminded Ferraro that Ferraro could be doing other things with his life, such as spending time with his wife and traveling.  Similarly, Assistant Principal Seyfried (also not a defendant) told Ferrarro that he did not understand why Ferraro was still working and that Ferraro should have retired long ago.  Id., Exhibit 14 ¶ 5.  In June,

2003, Resnick told Ferraro that Ferraro was doing a "deplorable job" coordinating the "LEARN" program, a work-study program through which Ferraro coordinated employment opportunities for GCA students in their chosen fields of study.  Resnick also told Ferraro that his teaching style was "outmoded" and "outdated."  Id., Exhibit 14 ¶ 6, Exhibit 26 at 98, 101.  In September, 2003, Ferraro was removed from his position as LEARN coordinator, but a year later he was reassigned to the position but given less time to perform the necessary work.  Id., Exhibit 26 at 110-112.  In January 2005, Ferraro was removed from the position once again and replaced by a younger teacher who was not properly licensed to act as coordinator.  Id., Exhibit 26 at 7, 44; Exhibit 14 ¶ 10.  Also, in September 2004, Ferraro, a licensed peer mentor, applied to serve as a mentor to new teachers, but the position was given to someone 20 years his junior who was not a certified mentor.  Id., Exhibit 14 ¶¶ 11-13.  Finally, on June 13, 2005, Resnick told Ferraro his teaching style was "antiquated" and then days later, Ferraro received a U rating for the year.  Id. ¶¶ 14-15.

Another plaintiff is Diana Hrisinko, who is currently 64 years old.  She began teaching at GCA in 2002.  Beginning in the fall of 2004, Resnick would come into her classroom unannounced, sometimes as often as five times per week.  Id., Exhibit 27 at 31-45.  On February 1, 2005, Hrisinko was transferred from GCA and thereafter worked briefly as a substitute teacher before assuming a position at another school.  Def. 56.1 ¶ 39; Pl. 56.1 ¶ 39; Ullrich Aff., Exhibit 27 at 28, 94.  She filed a grievance claiming that her transfer was illegal

because younger teachers with less seniority remained in their positions at GCA.  Id., Exhibit 7.

Plaintiff Elaine Jackson is currently 69 years old and was the Assistant Principal for the English Department at GCA for one semester in the fall of 2003.  During her one semester as Assistant Principal, Jackson increased the passing ratio of the English Regents exam.  Id., Exhibit 16 ¶ 2.  At no time did Resnick tell her that he was dissatisfied with her performance.  Id. ¶ 4.  Nonetheless, she was fired in January 2005 and replaced with a younger male who lacked relevant experience for the position.  Id. ¶ 3.

Plaintiff Midge Maroni, currently 61 years old, began teaching at GCA in 2002.  She testified that in early 2003 she was "subjected to ageist comments and unjust criticism" as "Resnick repeatedly made references to his desire to have a staff of young teachers."  Id., Exhibit 17 ¶ 2; Exhibit 29 at 61.  Resnick also said things such as "you don't take your profession seriously, you have old ideas."  Id., Exhibit 29 at 57.  Maroni was subjected to frequent short, unannounced visits to her classroom from Assistant Principal Brand. Id., Exhibit 17 ¶¶ 3-5.  During 2005, while Maroni was acting as advisor for the school newspaper, she complained to Resnick that her students lacked access to computers to produce the paper; the next year, a younger teacher received a computer to use for this purpose. Id., Exhibit 17 ¶ 7; Exhibit 29 at 132.  In June, 2005, Maroni received a U rating for the year.  Id., Exhibit 17 ¶ 9.  The U was later dismissed in an arbitration proceeding.  Id. ¶ 10.

Plaintiff Geraldine F. Whittington, currently 61 years old, began teaching at GCA in 1986.  She has a state teaching license in Graphic Arts.  Whittington testified that, beginning in 2004, Resnick criticized her for taking sick time to which she was entitled, threatened her with a U rating, id., Exhibit 30 at 39-43, and treated her with hostility, refusing to address her or make eye contact. Id., Exhibit 18 ¶ 4.  When Resnick visited her classroom, he glared at her in an obtrusive and hostile manner.  Id., Exhibit 30 at 57. In the spring of 2004, the computers and scanners in Whittington's classroom broke.  Whittington heard that new computer equipment was given to younger teachers rather than to her (despite her seniority). Id. at 86, 89.  Whittington retired effective July 1, 2004.  Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15.

Plaintiff Fitzroy Kington, currently 58 years old, began teaching at GCA in 1992.  During 2004-2005, Resnick repeatedly stood outside of Kington's classroom and shook his head disapprovingly. Ullrich Aff., Exhibit 31 at 42-43.  Assistant Principal Guttman (not a defendant) told Kington that Resnick wanted younger, more energetic teachers on staff, and asked when Kington was leaving (even though Kington had not indicated that he had any plan to leave the school). Id. at 46, 48.  During a social studies exhibition, Kington heard Resnick refer to "old, burnt out, tired teachers" who gave children detention and told them they were no good.  Id. at 66.  In May 2005, Kington applied to transfer to another school.  Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23.

Plaintiff Gloria Chavez, currently 59 years old, began teaching at GCA in 2002.  During the 2004-2005 school year, Resnick began a pattern of yelling at Chavez and threatening disciplinary action against her.  Ullrich Aff., Exhibit 20 ¶ 2.  He also told her that she looked "tired," should start drinking caffeinated coffee, id. ¶ 3, and should modernize her teaching style.  Id., Exhibit 32 at 103. In 2006, Chavez did not administer the oral portion of the Spanish regents exam because she was never given the required materials by Assistant Principal Silverman (no longer a defendant).  Id., Exhibit 32 at 73-76; Exhibit 20 ¶¶ 5-6.  Chavez was then served with disciplinary charges, given a U rating, and reassigned to the Manhattan Regional Operation Center.  Id., Exhibit 20 ¶¶ 7-10; Exhibit 32 at 94.

Plaintiff Erica Weingast, currently 60 years old, became GCA's bilingual coordinator in 2001.  In 2003-2004, Weingast was removed from an after-school assignment teaching English, and the position was given to a teacher who was 30 years younger than Weingast.  Id., Exhibit 21 ¶¶ 4-5.  Between 2003 and 2005, Weingast was "subjected to a campaign of harassment which entailed unwarranted criticisms of her management of [the] bi-lingual studies program."  Id. ¶ 6.  In June, 2004, Resnick began to scream at her in public and humiliate her at school.  Id. ¶ 7.  In June 2005, defendants told her to expect a U rating or resign; Weingast resigned.  Id. ¶¶ 10-11.

Plaintiff Ismael Diaz, currently 64 years old, began teaching at GCA in 2003.  During the fall of 2004, Silverman was "constantly" coming into Diaz's classroom, commenting on trivial matters and

asking Diaz to attend to a bulletin board in the hallway.  Id.,
Exhibit 34 at 29, 33.  She also checked his lessons plans more than
once a week.  Id. at 34.  In May 2004, Resnick and Silverman observed
one of Diaz's lessons and rated it "unsatisfactory".  Resnick refused
to speak to Diaz when Diaz said "Good Morning" in the halls.  Id. at
74, 76.  Diaz was given a U rating at the end of the 2004-2005 school
year and decided to retire.  Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.

Against this background, the remaining defendants (that is,
Resnick and the BOE) seek summary judgment on each of the remaining
plaintiffs' claims on a variety of grounds:

First, defendants seek dismissal of all the age discrimination
claims brought pursuant to § 1983 on the ground that these claims are
preempted by the ADEA.  See Zombro v. Baltimore City Police Dep't,
868 F.2d 1364, 1366-67 (4th Cir. 1989) (availability of the ADEA's
detailed procedures forecloses age discrimination claim brought under
§ 1983 because a plaintiff may not "cavalierly bypass the
comprehensive process fashioned by Congress in the ADEA"); Migneault
v. Peck, 158 F.3d 1131 (10th Cir. 1998); Lafleur v. Tex. Dep't of
Health, 126 F.3d 758, 760 (5th Cir. 1997).  The argument is not
without some force and may yet prevail in the Supreme Court.
However, although the Second Circuit has not yet decided the precise
issue, "the weight of authority in the Second Circuit favors the
position that the ADEA does not preempt claims under § 1983 for age
discrimination." Donlon v. Bd. of Educ., No. 06-CV-6027T, 2007 WL
4553932, at *3 n.1 (W.D.N.Y. Dec. 20, 2007); see also Stampfel v.
City of New York, No. 04 Civ. 5036, 2005 WL 3543696, at *3 (S.D.N.Y.

9

Dec. 27, 2005); Henneberger v. County of Nassau, 465 F.Supp.2d 176, 196 n.10 (E.D.N.Y. 2006).  This is because the Second Circuit, in Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143-144 (2d Cir. 1993), held that Title VII, 42 U.S.C. § 2000e et seq., did not preempt a § 1983 claim for gender discrimination in violation of the Equal Protection clause of the Constitution.  The Court explained that while a "[a] plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, . . . a plaintiff can assert a claim under Section 1983 if some law other than Title VII [such as the Equal Protection Clause] is the source of the right alleged to have been denied."  Id. at 143.  Courts in this Circuit that have found that the ADEA does not preempt an age discrimination claim under § 1983 have found that there is no reason to distinguish between the ADEA and Title VII in this respect.  See, e.g., Purdy v. Town of Greenburgh, 166 F. Supp. 2d 850, 867-68 (S.D.N.Y. 2001); Jungels v. State Univ. Coll., 922 F. Supp. 779, 785 (W.D.N.Y. 1996).  This Court agrees that, given the reasoning of Saulpaugh, the effective law in the Second Circuit is that the ADEA does not preempt a § 1983 claim for age discrimination in violation of the Equal Protection clause.

However, to establish a § 1983 claim against a municipal instrumentality, here, the BOE, a plaintiff must show that the official or officials who deprived him or her of a constitutional right acted pursuant to an official municipal policy or custom. Monell v . Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Where, as here, a plaintiff does not claim that the actions complained of were

taken pursuant to a formally ratified policy but instead asserts that they were taken by an official whose actions represent official municipal policy, the Court must determine whether the official had final policymaking authority in the specific area at issue.  Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) ("[o]nly . . . officials who have final policymaking authority may by their actions subject the government to § 1983 liability") (internal quotations and citation omitted).  Morever "whether a particular official has final policymaking authority is a question of state law."  Jett v. Dallas Indep. Sch. Dist, 491 U.S. 701, 737 (1989); see also Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 108-09 (2d Cir. 2006).

In this case, plaintiffs argue that "Principal Resnick was the decision maker on all significant matters affecting plaintiffs' employment" and was thus the final policymaker under state law.  See Pl. Mem. at 38.  However, under New York law, New York City school principals do not have final policy making authority over employment decision concerning teachers in their schools.  See McDonald v. Bd. of Educ., No. 01 Civ. 1991, 2003 WL 21782685, at *4 (S.D.N.Y. July 31, 2003)(holding that even superintendent was not final policymaking authority for purposes of employment decisions concerning teachers in his district);  Hill v. N.Y. City Bd. of Educ., 808 F. Supp. 141, 151 (E.D.N.Y. 1992) (holding that, where Board of Education and Chancellor "retained the authority to overrule [Director of the Office of Pupil Transportation] on appeal" of his decision to fire employees, director did not have final policymaking authority).  Therefore, plaintiffs' age discrimination claims against the BOE that

11

are brought pursuant to § 1983 and the Fourteenth Amendment must be, and hereby are, dismissed.

Second, defendants argue that the ADEA claims of certain of the plaintiffs must be dismissed on procedural grounds:

To begin with, defendants argue that Ferraro's ADEA claim is time-barred because he failed to file his complaint within 90 days of receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").  See 29 U.S.C. § 626(e); Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886 (2d Cir. 1995); Solomon-Lufti v. N.Y. City Dep't of Educ., No. 05 CV 7260, 2006 WL 2664218, at *3 (S.D.N.Y. Sept. 13, 2006).  Plaintiffs concede this point, see transcript 9/5/07 at 29, and Ferraro's ADEA claim is therefore dismissed.

Similarly, defendants argue, and plaintiffs concede, that Jackson's ADEA claim must be dismissed as time barred, because under the statute any claim accruing more than 300 days before a discrimination charge is filed with the EEOC is time barred.  See transcript 9/5/07 at 38-39; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002); Hodge v. N.Y. Coll. of Podiatric Med., 157 F.3d 164 (2d Cir. 1998).  Jackson's ADEA claim is therefore dismissed.

Whittington's ADEA claim is likewise dismissed, because she filed a charge of discrimination with the State Division of Human Rights ("SDHR") and the EEOC on June 18, 2005, but she retired from GCA effective 352 days prior to that date, to wit, on July 1, 2004.

Lastly, defendants argue that Weingast's ADEA claim must be dismissed because it was never presented to the EEOC.  See 29 U.S.C.

12

§ 626(d); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 753-54 (1979);

Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000).

However, under the so-called "piggybacking rule," "where one

plaintiff has filed a timely EEOC complaint, other non-filing

plaintiffs may join in the action if their individual claims aris[e]

out of similar discriminatory treatment in the same time frame."

Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 564 (2d Cir. 2006)

(internal quotations and citation omitted).  Although it is true that

"when the allegedly discriminatory activity affects a large group,

piggybacking is not allowed unless the filed charge provides some

indication that the grievance affects a group of individuals defined

broadly enough to include those who seek to piggyback on the claim,"

id., in this case the United Federation of Teachers brought an EEOC

charge against the BOE, alleging violations of the ADEA, on behalf of

all of its members over age 40.  See Ullrich Aff., Exhibit 1 ¶¶ 1-3.

The charge clearly provides some indication that the grievance

affects a group of individuals defined broadly enough to include

Weingast.  Therefore, defendants' motion for summary judgment

dismissing Weingast's ADEA claim is denied.[1]

---

[1] Defendants originally argued that Whittington and
Hrisinko's remaining § 1983 claims were barred by issue
preclusion, because they previously filed administrative charges
of discrimination with the SDHR, which issued a "no probable
cause" determination. However, defendants conceded at oral
argument that the SDHR determination had no preclusive effect, at
least in Hrisinko's case, because Hriskinko was not represented
by counsel during that proceeding.  See transcript 9/5/07 at 33.
Therefore, the motion for summary judgment on Hrisinko's
remaining § 1983 claim is denied.  See Kosakow v. New Rochelle
Radiology Assocs., 274 F.3d 706, 734-36 (2d Cir. 2001).  As to
Whittington, the record is unclear as to when she was and was not

Third, some, but not all, of the remaining claims must be
dismissed on the merits.  In order to establish a prima facie case of
age discrimination under either the ADEA or § 1983,[2] a plaintiff must
show that (1) he was a member of the protected class, i.e. an
employee over 40 years of age; (2) he was qualified for his position;
(3) he suffered an adverse employment action; and (4) the
circumstances surrounding the action give rise to an inference of age
discrimination.  Abdu-Brisson v. Delta Air Lines, 239 F.3d 456,
466-67 (2d Cir. 2001).  The burden to establish a prima facie case is
"neither onerous, nor intended to be rigid, mechanized, or
ritualistic."  Id. at 467 (internal citations and quotation marks
omitted).

If plaintiff makes out a prima facie case, a presumption of
discrimination arises and the burden then shifts to the employer to
provide evidence of a legitimate, non-discriminatory reasons for the
adverse employment action.  Spence v. Md. Cas. Co., 995 F.2d 1147,
1155 (2d Cir. 1993).  Once the employer has adduced such evidence,
the presumption of discrimination vanishes.  Id.  On a motion for
summary judgment, the question then becomes "simply whether the

---

represented by counsel.  However, the Court finds that deciding
whether her remaining § 1983 claim is barred by issue preclusion
is unnecessary because she has failed to establish a prima facie
case of age discrimination.  See infra.

   [2] An equal protection claim for age discrimination pursuant
to § 1983 is analyzed under the same standards as a claim made
pursuant to the ADEA.  See Sorlucco v. N.Y. City Police Dep't,
888 F.2d 4, 7 (2d Cir. 1989) (holding that McDonnell Douglas
burden-shifting analysis applies to a § 1983 claim); Stampfel,
2005 WL 3543696, at *3-4.

evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [the adverse action] was motivated at least in part by age discrimination."  Tomassi v. Insignia Fin. Group, 478 F.3d 111, 115 (2d Cir. 2007).

Here, defendants argue that summary judgment must be granted because plaintiffs cannot establish the third or fourth prongs of their prima facie case: that they suffered adverse employment actions and that the circumstances surrounding any such actions give rise to an inference of age discrimination.  They also argue that, even if plaintiffs have met their prima facie burden, defendants have articulated legitimate, non-discriminatory reasons for certain of the adverse actions and that, in these instances, the plaintiffs have failed to adduce sufficient evidence to enable a reasonable fact-finder to find that these adverse actions were motivated, at least in part, by age discrimination.

Regarding the requirement of an adverse employment action, "it is well-established in this Circuit[] that a plaintiff need not suffer a change of job title, a decline in income, or a reduction of benefits in order to establish an adverse job action."  Curran v. All Waste Sys., Inc., No. 99-9250, 2000 WL 639999, at *3 (2d Cir. May 16, 2000) (internal quotations and citation omitted).  Instead, a plaintiff suffers an adverse employment action if he or she undergoes a "materially adverse change" in the terms and conditions of employment.  Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  To be "materially adverse," however, a change must be

15

"more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotations and citation omitted). Instead, a materially adverse change must be of the order of "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or [the like]." Id. (internal quotations and citation omitted).

Here, several of the remaining plaintiffs allege that the following adverse actions were common to two or more of them: U ratings; adverse transfer to the Manhattan Regional Operation Center; and constructive discharge.[3]  In addition, certain plaintiffs allege other adverse actions particular to their individual situations, as discussed infra.

---

[3] In their opposition brief, plaintiffs state in passing that plaintiffs were also "subject to a hostile work environment."  Pl. Mem. at 31.  But this is nowhere alleged, even inferentially, in what is, after all, plaintiffs' Third Amended Complaint.  Such a claim may not now be raised in such belated fashion, long after discovery was completed, for it would hugely prejudice defendants.  Therefore, any supposed claims of hostile work environment are hereby dismissed as untimely.  Moreover, even if one were to reach the merits, "[a]n actionable discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 240 (2d Cir. 2007).  "The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the workplace."  Pozo v. J & J Hotel Co., L.L.C., No. 06 Civ. 2004, 2007 WL 1376403, at *15 (S.D.N.Y. May 10, 2007) (internal citations omitted) (Title VII).  As more fully detailed infra, no plaintiff here has adduced sufficient competent, admissible evidence that would allow any reasonable juror to find that he or she was subjected to a hostile work environment.

With respect to the U ratings, those plaintiffs who received end-of-year U ratings have created a genuine issue of material fact as to whether such a rating constitutes an adverse employment action. Plaintiffs have adduced evidence that the consequences of a U rating include: (a) being removed from "per session" (i.e. extracurricular) paid positions; (b) being barred from applying for per session positions for five years; (c) inability to work in summer school; (d) lost income, including inability to move up a salary step; (e) reduced pension benefits; (f) inability to transfer within the school district; and (g) damaged professional reputations and stymied careers.  See Ullrich Aff., Exhibit 12 ¶ 14; Exhibit 17 ¶ 11; Exhibit 21 ¶¶ 10, 12; Exhibit 35 at 40, 68-69, 239-240.  This is considerably more than the alleged adverse consequences that were asserted in those cases -- which are not binding on this Court in any event -- where district courts have found that a U rating did not suffice to defeat summary judgment.  See Carmellino v. Dist. 20 of N.Y. City Dept. of Educ., No. 03 Civ. 5942, 2006 WL 2583019, at *28 (S.D.N.Y. Sept. 6, 2006); Castro v. N.Y. City Bd. of Educ. Pers. Dir., No. 96 Civ. 6314, 1998 WL 108004 (S.D.N.Y. Mar. 12, 1998).

With respect to the transfers to the Manhattan Regional Operation Center, while a transfer from one school to another would not ordinarily be an adverse action, here, plaintiffs have adduced enough evidence to create a triable issue of fact as to whether the transfers to the Manhattan Regional Operation Center were adverse employment actions comparable to demotions.  See Switzer Decl., Exhibit DD.  To begin with, the Regional Operation Center is not a

17

school.  Moreover, the transfers were all made while disciplinary
charges were pending against the transferred teachers and therefore
could, and allegedly were, perceived as punishment, not just by the
plaintiffs but by their peers.  Furthermore, plaintiffs have
introduced evidence that, even if they were cleared of the
disciplinary charges, assignment to the Manhattan Regional Operation
Center remained a blight on their careers.  Ullrich Aff., Exhibit 20
¶ 11.  A reasonable juror could therefore find that although the
filing of disciplinary charges may not in and of itself constitute an
adverse employment action, being transferred during the pendency of
the disciplinary charges to a very different job at a very distant
location was, and was reasonably perceived, as a demotion that would
constitute a serious professional setback in a teacher's career.  See
Rodriguez v. Board of Educ., 620 F.2d 362, 365-66 (2d Cir. 1980)
(plaintiff's transfer from junior high school art teacher to
elementary school art teacher was adverse employment action where
plaintiff introduced evidence that the two jobs were profoundly
different and the transfer was "in effect, a demotion that would
constitute a serious professional setback and stigma to her career");
Hills v. City of New York, No. 03 Civ. 4265, 2005 WL 591130, at *4
(S.D.N.Y. Mar. 15, 2005) (plaintiff's transfer to a rotating shift
was adverse employment action where plaintiff presented evidence
that, as a result of the transfer, she lost a schedule that was
helpful in taking care of her grandchildren, lost the opportunity to
collect "nighttime differential . . . pay," and suffered a loss of
prestige).

With respect to constructive discharge, however, plaintiffs here failed to carry their burden.  It is true that a genuine constructive discharge, whereby an employee's resignation is treated as if the employer had actually discharged the employee, Pena v. Brattleboro Retreat, 702 F.2d 322, 325-26 (2d Cir. 1983), constitutes an adverse employment action.  But such a constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into an voluntary resignation." Spence, 995 F.2d at 1156 (internal quotations and citation omitted).  Constructive discharge cannot be shown if the employee merely "disagreed with the employer's criticisms of the quality of his work, or did not receive a raise, or preferred not to continue working for that employer.  Nor is the test merely whether the employee's working conditions were difficult or unpleasant." Id. Instead, a plaintiff must present evidence such that a rational juror could find that the employer deliberately created working conditions that were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Pena, 702 F.2d at 325 (internal quotations and citations omitted); see also Spence, 995 F.2d at 1149-1158.  Here, as detailed infra, no plaintiff has adduced sufficient competent, admissible evidence that would allow a reasonable juror to infer that he or she had been constructively discharged.

Turning from adverse actions to the fourth prong of the prima facie case, i.e., circumstances giving rise to an inference of discrimination, "[w]hile it is true that the stray remarks of a

decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented, the remarks can no longer be deemed stray and the jury has a right to conclude that they bear a more ominous significance." Abdu-Brisson, 239 F.3d at 468 (internal quotations and citation omitted). "The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." Tomassi, 478 F.3d at 115. Direct remarks made by a supervisor are generally held to create an inference of discrimination sufficient to avoid summary judgment. See, e.g., Rose v. N.Y. City Bd. of Educ., 257 F.3d 156, 161-62 (2d Cir. 2001) (school superintendent's remarks that he would replace school principal with someone "younger and cheaper" were direct evidence of discriminatory animus because the comments were made directly to the plaintiff on more than one occasion by her direct supervisor, who had "enormous influence in the decision-making process").

In this case, plaintiffs have collectively introduced more than sufficient evidence to create an inference of discrimination, thereby satisfying the fourth prong of each of their prima facie cases of discrimination. Among other things, plaintiffs here adduced evidence that: (a) of the sixteen GCA teachers who were given U ratings for 2004-2005, only three were under age forty; (b) of the eight teachers to receive U ratings for 2005-2006, only one was under age forty; (c) all of the teachers transferred from GCA during the 2004-2005 school year were over age forty; (d) Resnick denied Shapiro's request for

permission to take her students on a class trip to the theater but granted permission to a younger teacher; (e) when Friedline complained to Resnick that requiring a New York City Commercial Art license for various per session assignments amounted to age discrimination, he told her that he preferred to hire younger candidates; (f) when Ferraro told Resnick that he did not plan to retire, Resnick asked Ferraro's age and expressed "extreme dismay" that Ferraro was planning to remain at GCA; (g) Assistant Principal Johnson chided Ferraro for continuing to work and reminded him that he could be doing other things with his life, like spending time with his wife and traveling, while Assistant Principle Seyfried told Ferrarro he should have retired long ago; (h) in January 2005, Ferraro was removed from the position of LEARN coordinator and replaced by a younger teacher who was not properly licensed to coordinate the program; (i) when Ferraro, a licensed peer mentor, applied to serve as a mentor to new teachers, the position was given to someone 20 years his junior who was not a certified mentor; (j) Jackson was fired from her position as Assistant Principal and replaced with a younger male who lacked relevant experience for the position; (k) Resnick told Maroni that she had "old ideas"; (l) while Maroni did not receive a computer with which to produce the school newspaper, the next year a younger teacher received a computer for this purpose; (m) when the computers and scanners in Whittington's classroom broke, she heard that new computer equipment was given to younger teachers; (n) Assistant Principal Guttman told Kington that Resnick wanted younger, more energetic teachers on staff, and asked

when Kington was leaving; (o) during a social studies exhibition, Kington heard Resnick refer to "old, burnt out, tired teachers" who gave children detention and told them they were no good; (p) Resnick told Chavez she looked "tired", should start drinking caffeinated coffee, and should modernize her teaching style; and (q) Weingast was removed from an after-school assignment teaching English and the position was given to a teacher 30 years younger.

In short, all remaining plaintiffs who suffered U ratings or transfer to the Manhattan Regional Operation Center have made out a prima facie case of ADEA and § 1983 age discrimination on the merits. The Court turns, then, to certain more individual adverse actions alleged by particular plaintiffs, as well as to defendants' arguments that, even where a given plaintiff has made out a prima facie case, defendants have in some instances adduced evidence of legitimate, non-discriminatory reasons for the adverse actions and that in such instances plaintiffs have not shown that such reasons were pretextual or that, in any event, there is sufficient evidence to warrant a reasonable juror in finding that the  adverse action was motivated, at least in part, by age discrimination.

Plaintiff <u>Friedline</u> complains of two adverse actions, that she was wrongfully rejected for an open curriculum writing position for which she applied in the Spring of 2005 and that she received a U rating for the 2004-2005 school year.  As to the former, defendants do not challenge that such a rejection can be an adverse action, but they have introduced evidence that Friedline was not selected for the open curriculum writing position because she held a New York City

teaching license in Cold Type Composition, rather than the required City license in Commercial Arts, and because other candidates had more recent industry experience. See Switzer Decl., Exhibit HH. However, Friedline has responded with evidence that defendants have sought only to select and promote employees with newer teaching licenses (Commercial Art rather than Cold Type Composition), and that this adversely affects older employees, because only individuals over age 40 are likely to possess a Cold Type License, which has since been subsumed into the Commercial Art license.  Ullrich Aff., Exhibit 24 at 26-27, 80-81, 155; Exhibit 12 ¶¶ 2-5.  In addition, Friedline has introduced evidence that she had previously been selected to rewrite the entire commercial art program and to rework the curriculum for commercial art, offset printing, and commercial photography.  Id., Exhibit 24 at 76.  Yet, under Resnick, Friedline was allegedly rejected from a number of positions because of her Cold Type license, despite her qualifications.  Id., Exhibit 12 ¶¶ 6-9. This is sufficient to sustain a reasonable finding that Friedline was qualified for the open curriculum writing position and that the decision not to select her for the position was motivated, at least in part, by age discrimination.

As to the U rating, defendants present evidence that Friedline was given the rating because of allegations that she failed to deposit proceeds from a National Honors Society Valentine's Day Sale into the school account and because she published a program for the National Honor Society induction that was filled with typographical errors.  See Switzer Decl., Exhibit JJ; Ullrich Aff., Exhibit 35 at

42-44.  However, Friedline testified that the Valentine's Day sale
issue was the result of a student misplacing some funds, and that it
was eventually determined that Friedline had not stolen anything.
Ullrich Aff., Exhibit 12 ¶¶ 15-17; Exhibit 24 at 13, 61-62.  She also
testified that, with regard to the National Honors Society program
and letter, Resnick gave her 70 names to add to the program and
letter the night before the ceremony, Ullrich Aff., Exhibit 24 at 27-
28, thus giving her inadequate time to amend, proofread, and obtain
his approval.  Combined with the evidence establishing an inference
of discrimination, discussed supra, this is sufficient to sustain a
reasonable finding that the decision to give Friedline a U rating was
motivated, at least in part, by age discrimination.

Plaintiff Cruz complains of adverse actions in being given U
ratings in June 2005 and June 2006 and in being transferred to the
Regional Operation Center.  Defendants have largely ignored the June
2005 U rating but have responded to the June 2006 U rating and the
transfer by introducing evidence that all three Spanish teachers who
failed to administer the oral portion of the Spanish Regents exam in
January 2006, including a teacher who was 34 years old, were given U
ratings for the year and transferred to the Manhattan Regional
Operation Center.  See Switzer Decl., Exhibit B at 57-58, 82; Exhibit
CC.  In response, however, Cruz has introduced evidence that she did
not administer the oral portion of the exam because she was not given
the necessary materials (which were kept in a vault) by Assistant
Principal Silverman.  Ullrich Aff., Exhibit 13 ¶¶ 18-22.  Combined
with the evidence establishing an inference of discrimination

discussed <u>supra</u>, this is sufficient to sustain a reasonable finding that the decisions to give Cruz the U ratings and transfer her to the ROC were motivated, at least in part, by age discrimination.

Plaintiff <u>Ferraro</u> complains of adverse employment actions in being removed from the position of LEARN coordinator in January 2005, not being selected to serve as a mentor to new teachers in September 2004, and receiving a U rating for the year 2004-2005 school year. Defendants have not introduced any material evidence of legitimate, non-discriminatory reasons for any of these actions.

Plaintiff <u>Hrisinko</u>'s only clearly stated complaint of an adverse action is her reassignment, not to the Manhattan Regional Operation Center, but to another school, and she has failed to adduce any material evidence as to why this was adverse.  To the extent she also seeks, belatedly, to raise a hostile work environment claim, she has failed to do so, even assuming (contrary to fact) that the claim is timely.  Hrisinko's complaints to the effect that Resnick began coming into her classroom unannounced and looking around, sometimes as often as five times per week, are insufficient to create a genuine issue of material fact as to whether she suffered a materially adverse change in the terms and conditions of employment, nor is it a sufficient basis for a reasonable jury to find that Hrisinko's workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently pervasive to alter the conditions of her employment.  Therefore, summary judgment is granted dismissing all remaining claims of plaintiff Hrisinko.

Plaintiff <u>Jackson</u> has introduced evidence that she suffered an adverse employment action because she was fired from her position as Assistant Principal.  Defendants' have not sought to offer at this stage any legitimate, non-discriminatory reason for her firing.

Plaintiff <u>Maroni</u> complains of an adverse action because she received a U rating for the 2004-2005 school year.  Although the rating was later dismissed in an arbitration proceeding, it is not clear from the record what effect, if any, the rating had on Maroni before it was dismissed, and defendants have introduced no evidence of a legitimate, non-discriminatory reason for this action.  Consequently, the claim remains viable at this stage.

Plaintiff <u>Whittington</u> complains of many things, but none rises to the level of an adverse employment action, hostile work environment, or constructive discharge.  Whittington's testimony that she was criticized for taking sick leave, threatened with a U rating, and treated with hostility by Resnick, who refused to address her or make eye contact and who glared at her "in an obtrusive and hostile manner," is insufficient to create a genuine issue of material fact as to whether she suffered a materially adverse change in the terms and conditions of her employment.  In addition, Whittington's not receiving new computer equipment cannot rise to the level of an adverse employment action as a matter of law.  Furthermore, there is no evidence from which a reasonable juror could find that Whittington's resignation in 2004 could qualify as a constructive discharge.  Lastly, even if (contrary to fact) any claim by Whittington of hostile work environment were timely, none of the

foregoing allegations is sufficient for a reasonable juror to find that Whittington's workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently pervasive to alter the conditions of her employment.  Therefore, summary judgment is granted dismissing Whittington's remaining claims.

Plaintiff Kington's claims are similar to Whittington's and fail for the same reasons.  Kington's testimony that he began to feel pushed out of GCA, that Resnick repeatedly stood outside of his classroom and shook his head disapprovingly, and that Assistant Principal Guttman told Kington that Resnick wanted younger, more energetic teachers on staff does not rise to the level of an adverse employment action or a hostile work environment as a matter of law. In addition, Kington's application to transfer out of GCA cannot be considered a constructive discharge because there is no evidence from which a reasonable juror could find that Kington's working conditions were so difficult or unpleasant that a reasonable person in Kington's shoes would have felt compelled to transfer.  Accordingly, Kington's remaining claims must be, and hereby are, dismissed.

Plaintiff Chavez's claims cannot be dismissed on summary judgment for the same reason that summary judgment was denied as to Cruz's claims, supra.  Like Cruz, Chavez failed to administer the oral portion of the Spanish Regents exam and, as a result, was given a U rating for the 2005-2006 school year and reassigned to the Manhattan Regional Operation Center pending disciplinary charges; but, like Cruz, Chavez testified that she did not administer the exam because, despite her repeated requests, she was never given the

27

necessary materials by Ms. Silverman.  Ullrich Aff., Exhibit 32 at 73-76; Exhibit 20 ¶¶ 5-6.  Accordingly, Chavez's claims remain viable.

Plaintiff Weingast has created a genuine issue of material fact as to whether she suffered an adverse employment action because she was removed from an after-school assignment teaching English and the position was given to a teacher 30 years younger.  Defendants have not offered at this stage any legitimate, non-discriminatory reason for this action, and consequently the claim remains viable.

Plaintiff Diaz has created a genuine issue of material fact with regard to whether he suffered an adverse employment action because he received a U rating at the end of the 2004-2005 school year.  Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.  Defendants have not introduced at this stage any evidence of a legitimate, non-discriminatory reason for this action, and consequently the claim remains viable.

In addition to the discrimination claims, the Third Amended Complaint also makes allegations of retaliation.  A prima facie case of retaliation requires a plaintiff to adduce evidence that "(1) the plaintiff was engaged in an activity protected under the ADEA; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997).  Although the Third Amended Complaint refers to plaintiffs' retaliation claims largely in conclusory fashion, the instant motion papers center on the claims of

Diaz and Chavez.  But Diaz cannot state a claim for retaliation because he did not engage in any protected activity before he suffered the adverse action of which he complains, <u>i.e.</u>, the U rating at the end of the 2004-2005 school year.  Instead, he did not complain of discrimination (the protected activity in issue) until March, 2006.  <u>See</u> Switzer Decl., Exhibit F at 80-81, 83.  The same is true for Chavez, who filed a complaint of discrimination only after she had left GCA.  Ullrich Aff., Exhibit 32 at 102-103.[4]

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part.  Specifically, the following claims of the following plaintiffs remain to be tried premised on the following adverse actions:

| Friedline | § 1983 claim against Resnick and ADEA claim against BOE, both claims premised on Friedline's being denied an open curriculum writing position and/or being given a U rating. |
| Cruz | § 1983 claim against Resnick and ADEA claim against BOE, both claims premised on Cruz's being given U ratings in 2005 and/or 2006, and/or her being transferred to the Regional Operation Center. |

---

[4] It would appear from the briefing papers that plaintiffs are not pursuing a claim for retaliation as to any other remaining plaintiff in this case.  If this is not true, plaintiffs' counsel is hereby instructed to raise the issue during the joint conference call with Chambers, discussed <u>infra</u>.

| Ferraro | § 1983 claim against Resnick, premised on Ferraro's being removed from his position as LEARN coordinator, receiving a U rating, and/or being denied a peer mentorship position. |
| --- | --- |
| Jackson | § 1983 against Resnick, premised on Jackson's being fired as Assistant Principal. |
| Maroni | § 1983 claim against Resnick and ADEA claim against BOE, both claims premised on Maroni's being given a U rating in 2005. |
| Chavez | § 1983 claim against Resnick, and ADEA claim against BOE, both premised on Chavez's being given a U rating in 2006 and/or being transferred to the Regional Operation Center. |
| Weingast | § 1983 claim against Resnick and ADEA claim against BOE, both premised on Weingast's being removed from an after-school assignment teaching English. |
| Diaz | § 1983 claim against Resnick and ADEA claim against BOE, both premised on Diaz's being given a U rating in 2005. |

All other claims are hereby dismissed with prejudice.  Counsel
for the two sides are instructed to jointly call Chambers at 2 p.m.
on June 16, 2008 to schedule a prompt trial of the remaining claims.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          June 13, 2008